UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

DRAKE MATTHEW FREELS,

    Plaintiff,

    v.

BRIAN ENGLISH, et al.,

    Defendants.

CAUSE NO. 3:25-CV-217-PPS-AZ

OPINION AND ORDER

Drake Matthew Freels, a prisoner without a lawyer, filed a complaint. ECF 1. "A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation marks and citations omitted). Nevertheless, under 28 U.S.C. § 1915A, I must review the merits of a prisoner complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief.

Freels alleges that, since he arrived at the Miami Correctional Facility in March 2024, he has been having problems with criminal organizations operating at the prison and has been targeted by different gang affiliations. He indicates he has been assaulted, had knives pulled on him, and been robbed. He asserts that he has made staff aware of these problems.

He wrote to Warden Brian English about his concerns in June, July, August, and October 2024. He wrote to Deputy Warden Aaron Smith about his concerns in August, September, and October 2024. He wrote to Correctional Team Manager Nathanael Angle over fifteen times. He talked to Case Manager/Counselor Chandler Murphy, who failed to provide Freels with a form to request protective custody. He talked to Case Manager/Counselor Katina Murray, who was sympathetic but still allowed Freels to return to general population. He talked to Correctional Officer Sergeant Smeltzer, who was sympathetic, but did not take action to protect him. Freels alleges that Officer Sims, Sergeant Hoove, and Lieutenant Meyer, were likewise aware of his safety concerns and did not take action to protect him. Due to these problems, Freels has been moved multiple times.

In November 2024, Freels was moved into a cell shared with Kenneth Garretson, who Freels describes as an active Vice Lords member. After Freels was assigned to share a cell with Kenneth Garretson, Garretson told Officer Noojin, Officer Spencer, and Officer Neal that there was going to be problems if Freels was not moved. Freels also told Officer Noojin, Officer Spencer, and Officer Neal that he was having problems with Garretson and did not feel safe. Freels requested a protective custody form from Noojin. Noojin said Freels would need to wait, but Noojin never returned with the form. Freels also told Sergeant Leach he was not safe due to threats from a gang.[1] On November 13,

---

[1] Garretson was allegedly a member of the same gang referenced in this conversation, although it is unclear that Sergeant Leach knew this. Likewise, there's no indicating that Freels told Sergeant Leach that Garretson posed a threat to him.

2024, a few days after Freels began sharing a cell with Garretson, Garretson stabbed Freels. He suffered serious injuries.

The Eighth Amendment imposes a duty on prison officials to "take reasonable measures to guarantee the safety of the inmates." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). When an inmate is attacked by another inmate, the Eighth Amendment is violated only if "deliberate indifference by prison officials effectively condones the attack by allowing it to happen." *Haley v. Gross*, 86 F.3d 630, 640 (7th Cir. 1996). The defendant "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. "Exercising poor judgment . . . falls short of meeting the standard of consciously disregarding a known risk to his safety." *Lewis v. Richards*, 107 F.3d 549, 554 (7th Cir. 1997). "[A] complaint that identifies a specific, credible, and imminent risk of serious harm and identifies the prospective assailant typically will support an inference that the official to whom the complaint was communicated had actual knowledge of the risk." *Gevas v. McLaughlin*, 798 F.3d 475, 481 (7th Cir. 2015). General requests for help, expressions of fear, and even prior attacks are insufficient to alert guards to the need for action. *Klebanowski v. Sheahan*, 540 F.3d 633, 639–40 (7th Cir. 2008).

Freels has identified several officers who both heard Garretson say there was going to be a problem and knew from Freels that he was concerned that Garretson posed a risk to his safety: Officer Noojin, Officer Spencer, and Officer Neal. At this stage of the case, I must give Freels the benefit of all favorable inferences. While Freels' complaint is somewhat lacking in details, I find that these allegations permit a plausible

3

inference that the officers knew Garretson posed a specific, credible, and imminent risk of serious harm to Freels prior to the November 13, 2024, attack. Therefore, I will allow him to proceed against Officer Noojin, Officer Spencer, and Officer Neal.

Freels' also asserts that he complained about a variety of safety concerns to Warden Brian English, Deputy Warden Aaron Smith, Correctional Team Manager Nathanael Angle, Case Manager/Counselor Chandler Murphy, Case Manager/Counselor Katina Murray, Correctional Officer Sergeant Smeltzer, Officer Sims, Sergeant Hoove, Lieutenant Meyer, and Sergeant Leach, but his complaint does not contain facts from which it can be plausibly inferred that these defendants knew of any specific, credible, and imminent risk of serious harm by an identified prospective assailant. Therefore, I will not allow him to proceed against these defendants.

In addition to monetary damages, Freels asks that he be either transferred to another prison or granted protective custody. He contends that he has been attacked repeatedly and his life is in danger, but he provides no specific information about the time, place, or individuals who attacked him on any occasion other than November 13, 2024. More importantly, he has provided no specific information regarding any individual that poses an ongoing threat to his safety. A February 21, 2025, letter from the Director of the Ombudsman Bureau states that Freels was being housed in RHU, which was described as "the safest place" for him. ECF 1-1 at 11. Freels signed his complaint just four days later, on February 25, 2025. He has not indicated that his housing assignment has changed or provided any information about who he is housed with or otherwise interacts with that poses a threat to his safety, or what specific,

4

credible, imminent risk they pose to him. Therefore, Freels will not be permitted to proceed on a claim for injunctive relief.

Freels also filed a motion for a preliminary injunction or restraining order. ECF 3. "[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (emphasis in original). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). As I've explained, Freels' complaint does not allege facts that state a claim for permanent injunctive relief. Because he is not proceeding on a claim for permanent injunctive relief, preliminary injunctive relief is not available to him.

For these reasons, the court:

(1) DENIES Drake Matthew Freels' Motion for Preliminary Injunction or Restraining Order (ECF 3);

(2) GRANTS Drake Matthew Freels leave to proceed against Officer Noojin, Officer Spencer, and Officer Neal in their individual capacities for compensatory and punitive damages for deliberate indifference to Drake Matthew Freels' safety in the days leading up to the November 13, 2024, attack by Kenneth Garretson, in violation of the Eighth Amendment;

(2) DISMISSES all other claims;

(3) DISMISSES Warden Brian English, Deputy Warden Aaron Smith, Correctional Team Manager Nathanael Angle, Case Manager/Counselor Chandler Murphy, Case Manager/Counselor Katina Murray, Correctional Officer Sergeant Smeltzer, Officer Sims, Sergeant Hoove, Sergeant Leach, and Lieutenant Meyer;

(4) DIRECTS the clerk, under 28 U.S.C. § 1915(d), to request Waiver of Service from (and if necessary, the United States Marshals Service to use any lawful means to locate and serve process on) Officer Noojin, Officer Spencer, and Officer Neal. at the Indiana Department of Correction, with a copy of this order and the complaint (ECF 1);

(5) ORDERS the Indiana Department of Correction to provide the full name, date of birth, and last known home address of any defendant who does not waive service if it has such information; and

(6) ORDERS, under 42 U.S.C. § 1997e(g)(2), Officer Noojin, Officer Spencer, and Officer Neal to respond, as provided for in the Federal Rules of Civil Procedure and N.D. Ind. L.R. 10-1(b), only to the claims for which the plaintiff has been granted leave to proceed in this screening order.

SO ORDERED.

ENTERED:  March 13, 2025.

/s/   Philip P. Simon
PHILIP P. SIMON, JUDGE
UNITED STATES DISTRICT COURT